**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 25, 2012**

# In the Court of Appeals of Georgia

A12A0644. FUTCH v. THE STATE.

DILLARD, Judge.

Following a bench trial, Mark D. Futch was convicted of one count of battery (family violence-first offense) and one count of influencing a witness. Futch appeals his convictions, arguing that the evidence was insufficient to prove his guilt beyond a reasonable doubt and that the trial court erred in admitting evidence of prior and subsequent bad acts without first conducting an explicit balancing test. For the reasons set forth *infra*, we affirm in part and reverse in part.

Viewed in the light most favorable to the trial court's guilty verdict,[1] the evidence shows that Futch and his wife had been married for approximately five years

---

[1] *See, e.g.*, *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

at the time of the alleged battery on December 23, 2007, but at that time they were estranged and living separately. Futch and his wife have a daughter who was approximately two years old at the time, and who lived with her mother after the couple separated. A few days before the incident, Futch's wife permitted him to see their child. But when Futch refused to give the child back, his wife decided to arrange a meeting to recover her daughter.

On December 23, 2007, she met Futch and their daughter at Futch's father's home. They then traveled to Statesboro where they ate at a local restaurant. There, Futch tried to persuade his wife to reconcile, but this discussion quickly devolved into an argument, which in turn resulted in Futch taking the keys to his wife's car. Futch's wife then suggested that they go to the local Walmart to do Christmas shopping, hoping that this would give her an opportunity to escape with her daughter in tow.

Once at Walmart, Futch noticed his wife's nervousness. Suspecting that she would try to escape, he "put his hand" on his wife's neck and warned: "You can think it, don't try it. I'll kill you, I'll kill her and I'll kill myself." Shortly thereafter, Futch's wife noticed that their daughter's hands had become sticky from a lollipop, and—seizing the opportunity—suggested that she take their daughter to the bathroom to wash the child's hands. In the bathroom, Futch's wife started "shaking and crying"

2

with fear, and asked a woman in the bathroom "if she could please help [her]" by locating a manager or police officer. The Good Samaritan then tracked down a manager, who called the police.

Shortly thereafter, a local police officer responded to the call. And upon arriving at Walmart, the officer found Futch's wife sitting in her car, and observed that "[s]he was visibly upset, she was crying, [and] her voice was very shaky." The officer took a statement from Futch's wife, and arrested Futch for family-violence simple battery and family-violence simple assault.

Subsequently, Futch was indicted on one count of making terroristic threats and one count of battery (family violence-first offense). And then, prior to a trial scheduled for March 28, 2008, Futch contacted his wife and threatened her not to testify against him, warning, "[i]f you testify against me I'll kill you." Based on this threat, the charge of influencing a witness was added and presented as a Special Presentment to the Grand Jury on May 5, 2008, and ultimately true billed.

Thereafter, Futch waived his right to a jury trial and proceeded with a bench trial, during which Futch's wife testified to the alleged battery on December 23, 2007, and to Futch's threat to kill her if she testified against him. In addition, she testified about three other domestic incidents between the estranged couple. Specifically, she

3

testified that Futch pulled her out of bed by the ankles in November 2005, that Futch hit her and tried to strangle her on November 5, 2006, and that Futch cut her on the neck, causing a small puncture wound, on April 11, 2008. A detective with the Richmond Hill Police Department investigated this last incident and took pictures of the injury that Futch's wife suffered. The defense called Futch's father, mother, and brother to the stand, all of whom testified that they believed Futch's wife to be dishonest.

At the trial's conclusion, the court found Futch guilty on the counts of battery (family violence-first offense) and influencing a witness.[2] In explaining his ruling, the trial judge addressed Futch's wife:

> And, Ms. Futch, just that you don't misunderstand, I think that about half of your testimony was a lie too. And that truth is stuck somewhere in between all of it. But I think there is enough truth there to convict and that's the reason I'm doing it. And I don't have any reasonable doubt that both of them happened.

Subsequently, Futch moved for a new trial, which the trial court denied. This appeal follows.

---

[2] The State dismissed the charge of terroristic threats.

4

1. In his first enumeration of error, Futch contends that the evidence was insufficient to support his convictions of family-violence battery and influencing a witness. Specifically, he argues that because the trial judge noted his belief that "half of [the victim's] testimony was a lie," the victim's testimony is insufficient evidence to support his convictions. For the reasons noted *infra*, we affirm the conviction for influencing a witness. However, because the State failed to introduce sufficient evidence to support an essential element of family-violence battery, we are constrained to reverse Futch's conviction on that particular count.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[3] In evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] Accordingly, the trier of fact's verdict will be

---

[3] *See, e.g., English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[4] *Joiner*, 299 Ga. App. at 300 (citation omitted); *see also Lott v. State,* 303 Ga. App. 775, 775(1) (694 SE2d 698) (2010).

upheld "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case . . . ."[5]

(a) *Family-Violence Battery*. A defendant commits the offense of battery when he "intentionally causes substantial physical harm or visible bodily harm to another."[6] As defined in the statute, the term "visible bodily harm" means bodily harm "capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts."[7] And when a defendant commits the offense of battery against a spouse or other family member, then the offense constitutes family-violence battery.[8]

Whether substantial physical harm or visible bodily harm occurs is typically a question for the trier of fact.[9] That does not mean, however, that any type of

---

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citation and punctuation omitted).

[6] OCGA § 16-5-23.1 (a).

[7] OCGA § 16-5-23.1 (b).

[8] OCGA § 16-5-23.1 (f).

[9] *Richards v. State*, 222 Ga. App. 853, 854 (1) (b) (476 SE2d 598) (1996); *see also Williams v. State*, 248 Ga. App. 316, 318 (1) (546 SE2d 74) (2001) (holding that what constitutes serious disfigurement for the purposes of aggravated battery is

6

physical contact with the victim is sufficient to support a conviction for battery.[10] To establish battery, the State must introduce evidence of pain or harm.[11] Moreover, the State must introduce some evidence that the physical harm is substantial or visible to others.[12] Indeed, the severity of the harm inflicted is precisely what distinguishes battery from the lesser offense of simple battery: Simple battery requires offensive touching or physical harm, whereas battery requires substantial physical harm or visible bodily injury.[13] Our General Assembly has established harsher penalties for batteries that result in more severe physical harm, allowing a battery to be punished

---

almost always a question for the jury).

[10] *See Cox v. State*, 243 Ga. App. 582, 582 (1) (532 SE2d 697) (2000) (reversing a battery conviction on the grounds of insufficiency of the evidence where the defendant splashed beer on his wife ); *see also Williams*, 248 Ga. App. at 318 (1) (noting that the jury's role to determine what constitutes serious disfigurement does not mean that "no threshold exists").

[11] *See Cox*, 243 Ga. App. at 582 (1).

[12] *See* OCGA § 16-5-23.1 (a).

[13] *See* OCGA §§ 16-5-23 (a); 16-5-23.1 (a); *see also Williams*, 248 Ga. App. at 318 (1).

as a felony under certain circumstances, while generally punishing simple battery as a misdemeanor.[14]

In family-violence-battery cases, the State typically establishes substantial physical harm or visible bodily injury by introducing evidence that the defendant's conduct produced bruises, swelling, cuts, or some other physical mark.[15] Additionally, evidence that the victim suffered significant pain is also sufficient to support a

---

[14] *See* OCGA §§ 16-5-23 (b); 16-5-23.1 (e), (f) (2), (i); *see also Williams*, 248 Ga. App. at 318 (1).

[15] *See, e.g.*, *Powell v. State*, 304 Ga. App. 221, 222 (1) (695 SE2d 736) (2010) (upholding conviction based on evidence that the victim suffered bruises on her face and arm); *Simmons v. State*, 285 Ga. App. 129, 130 (645 SE2d 622) (2007) (upholding conviction based on evidence that the defendant caused the victim's head to bleed); *Buice v. State*, 281 Ga. App. 595, 596 (1) (636 SE2d 676) (2006) (upholding conviction based on evidence that the victim's face was swollen and back was bruised); *Gilbert v. State*, 278 Ga. App. 765, 766 (629 SE2d 587) (2006) (upholding conviction based on evidence that the victim's face was red from the defendant's blow); *Kuykendoll v. State*, 278 Ga. App. 369, 369-70 (1) (629 SE2d 32) (2006) (upholding conviction based on evidence that the victim suffered a nose bleed, bruises, a cut lip, and loosened teeth); *Griffin v. State*, 262 Ga. App. 87, 87-88 (1) (585 SE2d 145) (2003) (upholding conviction based on evidence that there were visible injuries on the victim's head and blood spattered at the scene); *Cobble v. State*, 259 Ga. App. 236, 237 (1) (576 SE2d 623) (2003) (upholding conviction based on evidence that the defendant pulled the victim's hair, leaving her head bloody); *Downs v. State*, 240 Ga. App. 740, 741 (1) (524 SE2d 786) (1999) (upholding conviction based on evidence that the victim suffered bruising and cuts on her arm and leg); *Holland v. State*, 239 Ga. App. 436, 437 (1) (521 SE2d 255) (1999) (upholding conviction based on evidence that the victim had a bleeding lower lip and finger marks on her neck).

8

conviction for family-violence battery.[16] However, in the case *sub judice*, the victim's testimony that Futch "put his hand" on her neck falls short of the evidence required to permit a reasonable trier of fact to infer that she suffered substantial physical harm or visible bodily harm.[17] The State has accordingly failed to carry its burden of establishing the severity of harm required for the offense of battery under OCGA § 16-5-23.1 (a). Consequently, the evidence is insufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that Futch was guilty of family-violence battery.[18] We are, therefore, constrained to reverse Futch's conviction on that offense.

(b) *Influencing a Witness.* A defendant commits the offense of influencing a witness when "with intent to deter a witness from testifying freely, fully and truthfully

---

[16] *See Harris v. State*, 257 Ga. App. 819, 820-21 (1) (572 SE2d 370) (2002) (finding the evidence sufficient to sustain a conviction for family-violence battery when the defendant squeezed the victim's head and pushed her into a window, causing her to fall to the floor and scream in pain).

[17] *Compare Mize v. State*, 135 Ga. App. 561, 561 (1) (218 SE2d 450) (1975) (holding that some physical harm may be presumed from being "firmly grabbed" and "squeezed" in cases of simple battery); *Owens v. State*, 173 Ga. App. 309, 312 (3) (326 SE2d 509) (1985) (same).

[18] *See Cox*, 243 Ga. App. at 582 (1); *see generally Jackson*, 443 U.S. at 319 (III) (B).

to any matter pending in any court, " he "communicates, directly or indirectly, to such witness any threat of injury or damage to the person, property, or employment of the witness . . . ."[19]

As noted *supra*, Futch contends that his wife's testimony is insufficient evidence to support his conviction because the trial judge noted his belief that "about half of [her] testimony was a lie." We disagree. Assessing the credibility of witnesses properly belongs to the trier of fact.[20] Indeed, this Court does not assess the credibility of witnesses on appeal.[21] Moreover, it is within the discretion of the trier of fact to believe part of a witness's testimony while disbelieving another part.[22] Furthermore, the fact finder may even rely on a witness's prior statements when that witness's testimony at trial contradicts those statements.[23]

---

[19] OCGA § 16-10-93 (a).

[20] OCGA § 24-9-80.

[21] *See, e.g.*, *Odett v. State*, 273 Ga. 353, 353-54 (1) (541 SE2d 29) (2001)*; Berry v. State*, 268 Ga. 437, 438 (1) (490 SE2d 389) (1997).

[22] *See* OCGA § 24-9-85 (a) ("When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury.").

[23] *See, e.g.*, *Buice*, 281 Ga. App. at 596 (1); *Griffin*, 262 Ga. App. at 88 (1); *Bailey v. State*, 254 Ga. App. 420, 421 (1) (562 SE2d 803) (2002).

Here, the trial court was entitled to rely on the testimony of Futch's wife that Futch threatened to kill her if she testified against him. And the testimony of a single witness is generally sufficient to establish a fact.[24] The State thus presented sufficient evidence that Futch acted with the requisite criminal intent to deter his wife from testifying and that he directly communicated a threat to her.[25] Accordingly, the trial court did not err in finding that Futch was guilty beyond a reasonable doubt of influencing a witness.[26]

2. Futch also contends that the trial court erred in admitting evidence regarding three other incidents of physical abuse of his wife as prior and subsequent bad acts without conducting an explicit balancing test. We disagree.

We first note that "[a]s a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the

---

[24] OCGA § 24-4-8; *see also Temple v. State*, 238 Ga. App. 146, 148 (2) (517 SE2d 850) (1999); *Mooney v. State*, 221 Ga. App. 420, 423 (1) (471 SE2d 904) (1996).

[25] *See Johnson v. State*, 277 Ga. App. 499, 505-06 (2) (627 SE2d 116) (2006) (indicating that it is for the fact finder to infer criminal intent from the defendant's words, conduct, and demeanor).

[26] *See id.*

exercise of that discretion absent evidence of its abuse."[27] Moreover, because this was

a bench trial, "there is a presumption, in the absence of a strong showing to the

contrary, that the trial judge sifted the wheat from the chaff, ignored illegal evidence

and considered only legal evidence."[28] We address Futch's claim of error with these

guiding principles in mind.

In *Wall v. State*,[29] the Supreme Court of Georgia held that evidence of the

defendant's prior bad acts toward the victim, such as a prior assault, quarrel, or threat,

is admissible when

> the defendant is accused of a criminal act against the victim, as the prior
> acts are evidence of the relationship between the victim and the
> defendant and may show the defendant's motive, intent, and bent of
> mind in committing the act against the victim which results in the
> charges for which the defendant is being prosecuted.[30]

---

[27] *Smith v. State*, 302 Ga. App. 128, 130 (1) (690 SE2d 449) (2010) (punctuation omitted).

[28] *Mays v. State*, 306 Ga. App. 507, 512 (2) (703 SE2d 21) (2010) (punctuation omitted).

[29] 269 Ga. 506, 509 (2) (500 SE2d 904) (1998).

[30] *Id*.

12

Importantly in *Wall*, our Supreme Court dispensed with the requirement that the trial court conduct a pre-trial hearing and make certain findings before allowing evidence of prior difficulties between the defendant and the victim.[31] Furthermore, because subsequent bad acts arise from the relationship between the defendant and victim in the same way that prior bad acts do, they are admissible under the same analysis.[32] Of course, as with any evidence, evidence of prior and subsequent difficulties may not be unduly prejudicial, remote, or confusing to the jury.[33]

Contrary to Futch's contention, however, there is no requirement that the trial judge conduct an "explicit" balancing test in order to conclude that the probative value of the evidence outweighs its prejudicial effect.[34] And here, Futch's prior and

---

[31] *Id.*

[32] *See Freeman v. State*, 269 Ga. App. 435, 437-38 (1) (604 SE2d 280) (2004) ("[W]e believe that evidence of a defendant's subsequent act toward the same victim is admissible as evidence of the relationship between the victim and the defendant, and it may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted."); *see also Reed v. State*, 309 Ga. App. 183, 187-88 (2) (709 SE2d 847) (2011).

[33] *See Tuff v. State*, 278 Ga. 91, 92 (2) (597 SE2d 328) (2004).

[34] *Cf. Newman v. State*, 233 Ga. App. 794, 795 (2) (504 SE2d 476) (1998) (holding that, in similar transaction evidence hearings, the trial court is not required to make an express finding that the probative value of the similar transaction evidence

13

subsequent physical abuse of his wife was relevant to showing the type of relationship that existed between them, as well as Futch's motive, intent, and bent of mind in committing the charged offenses.[35] Accordingly, the trial court did not abuse its discretion in admitting evidence of prior and subsequent bad acts.

For all the foregoing reasons, we reverse the trial court's conviction on the count of battery (family violence-first offense) and affirm the trial court's conviction on the count of influencing a witness.

*Judgment affirmed in part and reversed in part. Ellington, C. J., and Phipps, P. J., concur.*

---

outweighs its prejudicial effect).

[35] *See Hayes v. State*, 275 Ga. 173, 175 (3) (562 SE2d 498)(2002) (affirming the admissibility of evidence of prior bad acts to support convictions of malice murder and family-violence battery); *see also Cuzzort v. State*, 307 Ga. App. 52, 54 (1) (703 SE2d 713) (2010) (relying partially on evidence of prior difficulties to sustain convictions of family-violence battery, simple battery, and simple assault); *Simmons*, 285 Ga. App. at 130 (relying partially on evidence of prior difficulties to sustain convictions of family-violence battery and aggravated assault); *Buice*, 281 Ga. App. at 596 (1) (relying partially on evidence of prior difficulties to sustain a conviction of family-violence battery).